CHIEF JUSTICE GRAY,
concurring in part and dissenting in part.
¶117 I agree entirely with the Court’s analysis of the legal issues before us and with its conclusion that Smartt violated Canons 1,4, and 34 of the Canons of Judicial Ethics. I disagree with its determination that the appropriate sanction is suspension without pay through December 31, 2002, the end of his current term of office as a Cascade County Justice of the Peace. I would remove Smartt from office, effective immediately.
¶118 I recognize that, as a practical matter, there may be no real difference between suspension without pay through the end of Smartt’s term and his removal from office. In my view, however, the Canons he violated go to the very heart of service as a member of the judiciary. As the Court observes:
Smartt’s conduct has had a negative effect on the public’s perception of the judiciary. His conduct has been the subject of considerable publicity and news coverage, including some initiated by Smartt himself. Rather than admit to any wrongdoing himself, Smartt has publicly criticized Harris’s actions in this matter. Additionally, other than his claim that he was composing a joke birthday card for his wife, Smartt offers no evidence of mitigating factors.
¶119 I would remove Smartt from office, as recommended by a majority of the members of the Judicial Standards Commission-indeed, all the nonjudicial members of that Commission. I share their view that suspension without pay is not enough to restore *532 the public’s faith and trust in the judiciary. As the majority recommending removal put it, Smartt “is not fit to sit on the bench or wear the honored robes of a judge.” I agree, and I believe there is a qualitative difference between suspension without pay and removal from office under the facts and circumstances of this case. This difference is unlikely to go unnoticed by the people of Montana.
DISTRICT JUDGE LARSON, sitting for JUSTICE COTTER, joins in the foregoing concurring in part and dissenting opinion of CHIEF JUSTICE GRAY.
DISTRICT JUDGE LARSON, sitting for JUSTICE COTTER, specially concurring and dissenting.
¶120 I join in the Chief Justice’s concurring opinion concerning violations of Judicial Canons 1, 4 and 34 and evidence obtained from Justice Smartt’s Chambers, as well as in the Chief Justice’s dissent on the sanction imposed by the majority. A court’s credibility is linked with its accountability. We should send a strong message not only to judges but to all citizens that ethical behavior is a requirement of office. I also join in Justice Nelson’s call for a new Code of Judicial Ethics, but for different reasons.
¶121 Montana’s Constitution, Article VII, Section 11, grants the Judicial Standards Commission the exclusive power to screen, investigate and make findings and recommendations concerning ethical complaints against judges to the Supreme Court. This constitutional role and duty should not be overlooked. The Commission has also adopted rules concerning jurisdiction and grounds for discipline, e.g., Rule 9. Even if the style and drafting of the present Canons had been properly raised in this case, Commission Rule 9(3), willful misconduct in office, also would have supported the Commission’s findings and recommendations.
¶122 The correct and careful application of the Canons and rules by the Commission has been something the people of this state have been able to rely on for almost 30 years. We all can feel confident that Montana’s judicial branch is held to high ethical standards because of this independent Commission. Our citizens also have to be told the Commission operates with a small staff, two, and volunteer members. The attorney for the Commission in this matter has been paid, but I suspect he could have made more from his day job.
¶123 As to the weakness of the Canon’s mandates or the need to update them, the United States Supreme Court has recently required an entirely new vision of judicial rights and obligations under Republican Party of Minnesota v. White (2002),_U.S._, 122 S.Ct. 2528,153 L.Ed.2d 694.
¶124 While it only makes sense to collaborate in the development of *533 a new code of judicial ethics with the American Bar Association and American Judicature Society, I also urge the Court and drafters to recognize other issues, including the lack of clarity and need to recognize a more flexible role forjudges in their community activities as noted by this recent Resolution passed on July 17, 2002, by the membership of the oldest and largest judicial membership organization-the National Council of Juvenile and Family Court Judges-at its 65th Annual Conference in Boston, Massachusetts:
Resolution In Support of the Modification of Canons of Judicial Ethics
Whereas, the National Council of Juvenile and Family Court Judges has a long established policy of encouraging the judiciary to engage in community outreach to foster the effective administration of justice; and
Whereas, the annual Conference of Chief Justices, at their Annual Meeting in August 2000, passed a resolution recognizing and encouraging judges to become involved in their communities to improve the quality of justice; and
Whereas, the role of juvenile and family court judges involves much more than fact-finding and adjudication; and
Whereas, judges are increasingly expected to take on the role of case management, overseeing the successful implementation of comprehensive court-ordered service plans; and
Whereas, to serve the public effectively, judges must be aware of services in the community and must educate the public about issues coming before the courts to encourage community support of the work of juvenile and family court judges; and
Whereas, judges taking on such roles still experience conflicting response and confusion as to the propriety of their activities; and
Whereas, the Canons of Judicial Ethics vary from state to state and may not reflect the realities of being an effective juvenile and family court judge; and
Whereas, judges would benefit from a comprehensive set of appropriate guidelines and model rules, in efforts to bring about change and clarity regarding their roles as juvenile and family court judges both on and off the bench; and
Whereas, the National Council of Juvenile and Family Court Judges should take a leadership role in modifying canons of judicial ethics to assure that juvenile and family court judges can actively work toward the improvement of outcomes for children, individuals, and families who appear in our courts, without unreasonable fear of censure; and
Now Therefore, be it resolved that the Board of Trustees directs *534 the development, in collaboration with other interested organizations, of a committee to draft specific canons for the affirmative ethical implementation of the aforementioned resolution;
Furthermore, that the proposed canons be presented to the National Council of Juvenile and Family Court Judges and Conference of Chief Justices for review and approval at their 2003 annual conferences, and other appropriate bodies as may be helpful in implementing these new canons.